Andranik Tsarukyan (SBN 258241)
Andy@remedylawgroup.com
Armen Zenjiryan (SBN 261073)
Armen@remedylawgroup.com
REMEDY LAW GROUP LLP
Remedy Law Group LLP
303 N. Glenoaks Blvd., Suite 200
Burbank, CA 91502

*Attorneys for Plaintiff Adam Wolf*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADAM WOLF, an individual,<br>Plaintiff,<br>v.<br>SPYCLOUD, INC., a Delaware corporation; and Does 1 through 50, inclusive,<br>Defendants. | Case No. 5:25-cv-03435-HDV-MAA<br>**FIRST AMENDED COMPLAINT**<br>1. Disability Discrimination in Violation of FEHA<br>2. Failure to Provide Reasonable Accommodations in Violation of FEHA<br>3. Failure to Engage in Good Faith Interactive Process in Violation of FEHA<br>4. Failure to Prevent Discrimination and/or Retaliation in Violation of FEHA<br>5. Retaliation in Violation of FEHA<br>6. Wrongful Termination in Violation of Public<br>**DEMAND FOR JURY TRIAL** |

1. Plaintiff Adam Wolf (hereinafter, referred to as "Plaintiff"), individually, brings this action against Defendants SpyCloud, Inc. ("SpyCloud" or the "Company") and Does 1 through 50, inclusive (hereinafter, referred to collectively as "Defendants") as follows:

## PARTIES

2. Defendants employed Plaintiff and permitted Plaintiff to work and exercised control over Plaintiff's wages, hours, and working conditions.

3. Plaintiff is, and at all times relevant to this action was, a resident of San Bernardino County, California.

4. Plaintiff is informed and believes, and based thereon alleges that Defendant SpyCloud, Inc. is a foreign corporation organized under the laws of the State of Delaware with a main office located at 2130 Congress Avenue, Austin, Texas 78704.

5. Defendant SpyCloud, Inc. at all times relevant herein, was and is conducting business throughout the state of California.

6. At all times relevant herein, Plaintiff was employed by Defendants in the County of San Bernardino, California.

7. Plaintiff does not know the true names of Defendants Does 1 through 50, inclusive, and therefore sues them by those fictitious names. The names, capacities, and relationships of Defendants Does 1 through 50, inclusive, will be alleged by amendment to this Complaint when the same are known to Plaintiff.

8. Plaintiff is informed and believes and thereon alleges, that at all times mentioned in this Complaint, each Defendant was acting as the agent, employee, partner, co-conspirator or joint venturer of each of the remaining Defendants, and was acting in concert with each remaining Defendant in doing the things herein alleged, and, at all times, was acting within the course and scope of such agency, employment, partnership, joint venture, or concert of action.

9. Plaintiff is informed and believes and thereon alleges that at all relevant times each of the Defendants was the integrated enterprise, joint employer of Plaintiff and was engaged with some or all of the other Defendants in a joint enterprise for profit and bore such other relationships to some or all of the other Defendants so as to be liable for the conduct of them. Plaintiff performed services for each and every one of Defendants, and to the mutual benefit of all Defendants, and all Defendants shared control of Plaintiff as

employers, either directly or indirectly, and of the manner in which Defendants' business was conducted.

10. Plaintiff is further informed and believes and thereon alleges that all Defendants acted pursuant to and within the scope of the relationships alleged above, that all Defendants knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants and that all Defendants acted pursuant to a conspiracy and agreement to do the things alleged herein.

11. Plaintiff makes the allegations in this complaint without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion, and Plaintiff reserves all of Plaintiff's rights to plead in the alternative.

**JURISDICTION AND VENUE**

12. The amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Plaintiff at all times relevant herein was a resident of the County of San Bernardino, California.

14. This Court has subject matter jurisdiction over this action by reason of Defendant's removal from the San Bernardino County Superior Court pursuant to 28 U.S.C. §§ 1332 and 1441. Venue is proper in this District pursuant to 28 U.S.C. § 1441(a) because the state court action was pending in this District.

15. Plaintiff has exhausted all of the administrative requirements for proceeding with his claims under the FEHA by timely filing an administrative complaint against Defendants with the Civil Rights Department ("CRD") and receiving a Notice of Case Closure/Right-to-Sue Letter.

**GENERAL ALLEGATIONS**

16. Plaintiff was employed by Defendants as a technical marketing engineer from on or about June 23, 2025 through his unlawful termination on or about September 9, 2025.

17. Plaintiff is disabled and suffers from numerous medical and psychiatric disorders including Obsessive Compulsive Disorder, Tourette's Syndrome, Generalized Anxiety Disorder, Depression, and learning disabilities related to auditory processing

difficulties.

18. Plaintiff's disabilities substantially limit one or more major life activities, including but not limited to interacting with others, communicating, concentrating, thinking, working, and participating in social activities. Plaintiff experiences recurrent episodes of severe anxiety, panic responses, and cognitive overload that impair his ability to communicate clearly, engage in group interactions, and process information in real time. These symptoms manifest as racing thoughts, difficulty organizing speech, excessive or disorganized verbal communication, physical shaking, sweating, increased heart rate, and withdrawal from interactions.

19. Because of these conditions, Plaintiff also presents with physical and motor tics, twitches, has visual difficulties, becomes increasingly anxious in social settings and has difficulty processing or responding to routine social cues, among other symptoms regularly associated with these conditions.

20. These limitations occur frequently, including multiple times per week depending on workplace stressors, and may last for several hours or an entire day. During flare-ups, Plaintiff experiences significant difficulty participating in meetings, engaging in social communication, and processing auditory information, which directly impacts his ability to function in high-interaction environments without accommodation.

21. Plaintiff chose a career in technical engineering, in part, because it allows him to work more independently and minimize symptom flare-ups related to his conditions.

22. Plaintiff's conditions particularly impact his ability to participate in frequent meetings, spontaneous verbal discussions, and required social engagement with colleagues, but do not prevent him from performing the essential functions of his role, namely researching, writing, editing, and producing technical marketing content, especially where work can be performed independently or with structured communication.

23. Defendants are in the business of developing and selling cybersecurity software solutions for national and international organizations.

24. Throughout May and June 2025, Plaintiff successfully completed several

rounds of remote interviews with SpyCloud.

25. On or about June 4, 2025, Defendants conveyed an offer of employment to Plaintiff, which Plaintiff accepted.

26. Defendants hired Plaintiff to work remotely from California as a technical marketing engineer on the product marketing team, reporting to Colette Tomasiak, Senior Director of Product Marketing.

27. As a technical marketing engineer at SpyCloud, Plaintiff was responsible for creating technical content for SpyCloud customers and prospective customers, including informational webpages and interactive product demos.

28. Upon hire, Plaintiff explained his disabilities to Defendant and requested accommodations related to his auditory processing limitations, including additional time, visual training materials, and structured support during onboarding and technical training. Plaintiff explained that he processes information more effectively visually and has difficulty retaining information conveyed solely through verbal instruction. Defendants failed to provide any meaningful accommodation or adjustment to the onboarding process.

29. Soon after his hire, Tomasiak requested that Plaintiff fly out to Defendants' Austin, Texas office to meet some team members and participate in a Company "doc-o-thon" event.

30. Plaintiff told Tomasiak that he suffers from several psychiatric conditions and disabilities, including OCD and Tourette's Syndrome, which limit his ability to engage in extended social gatherings, during which his symptoms significantly escalate, and that it is generally easier for him to manage his symptoms while working with smaller groups or remotely.

31. Plaintiff specifically requested accommodations related to the Austin trip, including clarification of whether attendance at group dinners and extended social events was required and whether his participation could be limited due to his disabilities. Plaintiff further communicated that prolonged social interaction exacerbated his symptoms and requested flexibility in how he participated. Tomasiak responded that participation in all

activities was expected and did not offer any modification or alternative.

32. Tomasiak did not engage in a good faith interactive process to allow Plaintiff to participate in the doc-o-thon event with reasonable accommodations.

33. Instead, Tomasiak dismissed Plaintiff's condition as insignificant and told Plaintiff that the event was "low pressure."

34. On or about July 7-9, Plaintiff traveled to Defendants' Austin, Texas office and participated in the doc-o-thon event, including numerous full workday team events and several work dinners with colleagues.

35. Tomasiak, who worked remotely from Illinois, was also present in the Austin office for the doc-o-thon event.

36. During the Austin event, Plaintiff experienced nightly anxiety flare-ups in anticipation of required group dinners and prolonged social interaction. These episodes included panic symptoms, shaking, racing thoughts, and emotional distress, which forced Plaintiff to isolate in his hotel room prior to evening events in order to attempt to stabilize his condition. During the event, Tomasiak noticed Plaintiff's escalating symptoms, including increasing motor and vocal tics, and indicated Plaintiff could consider leaving the dinner early that night.

37. It was clear Tomasiak was displeased to see Plaintiff's symptoms present at work, which, in turn, caused Plaintiff's symptoms to intensify and caused Plaintiff severe emotional distress.

38. Plaintiff internally struggled to manage his symptoms through the event, but overall, was productive and interactive throughout the trip.

39. After returning to California, Plaintiff continued to work remotely with Tomasiak, colleagues within the products marketing team as well as colleagues across the sales, product development and software teams on several important projects.

40. Following the Austin trip, Plaintiff requested reasonable accommodations during one-on-one meetings with Tomasiak, including a reduction in the number of meetings and increased time for independent work, explaining that frequent meetings

exacerbated his anxiety, impaired his concentration, and reduced his ability to complete his work. Tomasiak stated she would "look into it" but failed and refused to implement any changes or provide accommodation. Plaintiff repeated this request on multiple occasions and was effectively ignored.

41. Plaintiff also raised these concerns and accommodation requests to Tomasiak's supervisor, Heather Smith, Chief Marketing Officer. Plaintiff explained his disabilities, his prior accommodation requests to Tomasiak, and his need for a reduced meeting load and more independent work time. Smith acknowledged Plaintiff's concerns but failed to take any action, did not engage in any further interactive dialogue, and did not provide or implement any accommodation.

42. Plaintiff performed well at his position and regularly received positive feedback on the status of his work assignments and ongoing projects from Tomasiak during their weekly one-on-one meetings. At all relevant times, Plaintiff was a qualified individual under FEHA in that he possessed the requisite skill, experience, education, and ability to perform the essential functions of his position.

43. Plaintiff had numerous positive interactions with colleagues throughout his employment with Defendants and did not receive any negative feedback relating to his work or performance.

44. Notwithstanding, on or about Friday, September 5, 2025, Tomasiak told Plaintiff, during a regular one-on-one meeting, that his work performance was great, but she wanted him to be chattier across Slack channels.

45. Tomasiak's directive was not a work or performance related criticism; rather she told Plaintiff that she wanted him to engage in more social chatter with colleagues on Slack like she did, including asking colleagues about their weekends or families and similar type conversations.

46. Plaintiff's disabilities limited his ability to interact socially, but Plaintiff, at all times, was able to perform his essential job functions.

47. Defendants, including Tomasiak, had knowledge of Plaintiff's disabilities and

related limitations.

48. Tomasiak acknowledged during the conversation that other employees do not engage in as much non-work related or friendly chatter as she does on Slack, but because Plaintiff was on her team, he needed to try harder to be more outgoing on Slack.

49. In response, Plaintiff reminded Tomasiak that he has a difficult time engaging in “chit chat” and tends to be more introverted because of his disabilities, but agreed to try to engage in more small talk on Slack as requested. Plaintiff explained that his disabilities limited his ability to engage in non-work-related social communication, and requested, as an accommodation for those limitations, that Tomasiak modify her expectations regarding “chit chat” and social engagement on Slack. Despite this request, Tomasiak maintained the requirement and did not offer any alternative or accommodation.

50. Following that call, Plaintiff sent Tomasiak an email, which documented Tomasiak’s request and Plaintiff’s agreement to chat more actively on Slack despite his disabilities.

51. The very next workday morning, on or about Monday, September 9, 2025, Tomasiak called Plaintiff, with a human resources employee on the line, and terminated Plaintiff’s employment effective immediately.

52. Plaintiff was shocked and asked Defendants why he was being terminated.

53. Tomasiak, however, refused to provide Plaintiff with any reason for the termination and instead, dropped from the line.

54. Plaintiff thereafter attempted to reach Tomasiak, Defendant’s Chief Marketing Officer Heather Smith and other employees, but Defendants refused to give Plaintiff a reason for the termination.

55. Rather, Defendants offered Plaintiff a small severance in exchange for a full release of all claims, which Plaintiff rejected.

56. The temporal proximity between Plaintiff’s repeated requests for accommodation and his termination, including his reaffirmation of his limitations regarding social communication immediately prior to his discharge, demonstrates that

Plaintiff's disability and requests for accommodation were substantial motivating factors in Defendants' decision to terminate his employment.

57. Throughout his employment, Defendants refused to engage in a good faith interactive process or provide Plaintiff with reasonable accommodations for his known disabilities. At all times, Plaintiff was willing to engage in an interactive process and provided sufficient information to Defendants regarding his disabilities, limitations, and requested accommodations. Defendants failed to engage in any meaningful dialogue, failed to explore alternative accommodations, and failed to provide any effective accommodation despite repeated requests. Specifically, Defendants failed to follow up on Plaintiff's accommodation requests, failed to propose alternative accommodations, and failed to engage in any substantive dialogue regarding Plaintiff's requests.

58. Since Plaintiff's unlawful termination, Defendants have publicly posted a job opening for Plaintiff's former position on numerous job forum websites.

59. Defendants failed to maintain or enforce adequate policies, training, and practices to prevent disability discrimination and retaliation in the workplace. Defendants did not provide Plaintiff with any meaningful anti-discrimination or disability-accommodation training during onboarding. Despite Plaintiff's repeated disclosure of his disabilities and his accommodation requests to both his direct supervisor (Tomasiak) and her supervisor (Smith), Defendants conducted no investigation, took no remedial action, and did not refer the matter to human resources for review or intervention. When Defendants terminated Plaintiff, the human resources representative who joined the termination call provided no explanation, conducted no inquiry into whether the termination was related to Plaintiff's disabilities or accommodation requests, and did not document or assess the stated basis for the termination.

60. Any reasons provided by Defendants for Plaintiff's termination other than discrimination and refusal to accommodate is pretextual and belied by the facts.

## FIRST CAUSE OF ACTION

*Disability Discrimination in Violation of FEHA*

*(On Behalf of Plaintiff Against All Defendants)*

61. Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

62. Government Code section 12940(a) provides in relevant part:

> It is an unlawful employment practice. . . (a) [f]or an employer, because of the. . . physical disability, mental disability to discharge the person from employment. . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

63. Defendants discriminated against Plaintiff based on Plaintiff's disability or perceived disability.

64. At all times relevant herein Defendants were employers who employed five (5) or more employees and were therefore bound by FEHA.

65. Defendants employed Plaintiff.

66. Defendants knew that Plaintiff had a disability that limited a major life activity, including limitations on interacting with others, communicating, concentrating, and working in high-social or meeting-intensive environments.

67. Plaintiff was able to perform the essential job duties of Plaintiff's position with or without reasonable accommodation for Plaintiff's disability, including producing technical written content, conducting research, and collaborating in a structured and limited manner.

68. Defendants refused to provide a reasonable accommodation to Plaintiff without engaging in a good faith interactive process.

69. Instead, Defendants terminated Plaintiff's employment because of his disability.

70. Plaintiff suffered harm when he was discriminated against and discharged by Defendants.

71. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

72. As a direct and proximate result of the aforementioned adverse employment actions by Defendants against Plaintiff, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at trial.

73. As a direct and proximate result of Defendants' wrongful termination of Plaintiff's employment, Plaintiff has suffered humiliation, emotional distress, and pain and anguish, all to Plaintiff's damage in an amount according to proof at trial.

74. The conduct of Defendants and each of them as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights. Defendants and each of them, and their agents/employees, managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said Defendants.

75. Government Code section 12965(c)(6) permits the court to award reasonable attorneys' fees and costs, including expert witness fees, to a plaintiff that successfully pursues a FEHA claim. Plaintiff has and will continue to incur attorneys' fees in the pursuit of this action. As such, Plaintiff is entitled to an award of reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

*Failure to Provide Reasonable Accommodations in Violation of FEHA*

*(On Behalf of Plaintiff Against All Defendants)*

76. Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

77. Government Code section 12940(m)(1) provides in relevant part:

> It is an unlawful employment practice. . . (m)(1) [f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee.

78. California Code of Regulations, Title 2 section 11068 provides in relevant part:

> (a) Affirmative Duty. An employer or other covered entity has an affirmative duty to make reasonable accommodation(s) for the disability of any individual applicant or employee if the employer or other covered entity knows of the disability, unless the employer or other covered entity can demonstrate, after engaging in the interactive process, that the accommodation would impose an undue hardship.
>
> . . .
>
> (e) Any and all reasonable accommodations. An employer or other covered entity is required to consider any and all reasonable accommodations of which it is aware or that are brought to its attention by the applicant or employee, except ones that create an undue hardship. The employer or other covered entity shall consider the preference of the applicant or employee to be accommodated, but has the right to select and implement an accommodation that is effective for both the employee and the employer or other covered entity.

79. At all times relevant herein Defendants were employers who employed five (5) or more employees and were therefore bound by FEHA.

80. Defendants employed Plaintiff.

81. Defendants knew that Plaintiff had a disability that limited a major life activity.

82. Plaintiff was able to perform the essential job duties of Plaintiff's position with reasonable accommodation for Plaintiff's disability.

83. Plaintiff requested that Defendants make reasonable accommodations for Plaintiff's disability so that he would be able to perform the essential job requirements, including (1) reduction of excessive meetings and increased independent work time; (2) flexibility regarding participation in group social events and non-essential in-person interactions; and (3) additional visual and structured onboarding support due to auditory processing limitations.

84. Defendants refused to provide a reasonable accommodation to Plaintiff without engaging in a good faith interactive process.

85. Defendants terminated Plaintiff's employment because he requested accommodations due to his disability.

86. Plaintiff suffered harm when he was denied a reasonable accommodation by Defendants.

87. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

88. As a direct and proximate result of the aforementioned adverse employment actions by Defendants against Plaintiff, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at trial.

89. As a direct and proximate result of Defendants' wrongful termination of Plaintiff's employment, Plaintiff has suffered humiliation, emotional distress, and pain and anguish, all to Plaintiff's damage in an amount according to proof at trial.

90. The conduct of Defendants and each of them as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights. Defendants and each of them, and their agents/employees, managing agent and/or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said Defendants.

91. Government Code section 12965(c)(6) permits the court to award reasonable attorneys' fees and costs, including expert witness fees, to a plaintiff that successfully pursues a FEHA claim. Plaintiff has and will continue to incur attorneys' fees in the pursuit of this action. As such, Plaintiff is entitled to an award of reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

*Failure to Engage in Good Faith Interactive Process in Violation of FEHA*

*Cal. Gov. Code § 12940*

*(On Behalf of Plaintiff Against All Defendants)*

92. Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

93. Government Code section 12940(n) provides in relevant part:

> It is an unlawful employment practice. . . (n) For an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition.

94. California Code of Regulations Title 2 section 11069 provides in relevant part:

> (a) Interactive Process. When needed to identify or implement an effective, reasonable accommodation for an employee or applicant with a disability, the FEHA requires a timely, good faith, interactive process between an employer or other covered entity and an applicant, employee, or the individual's representative, with a known physical or mental disability or medical condition. Both the employer or other covered entity and the applicant, employee or the individual's representative shall exchange essential information identified below without delay or obstruction of the process.

95. At all times relevant herein Defendants were employers who employed five (5) or more employees and were therefore bound by FEHA.

96. Defendants employed Plaintiff.

97. Defendants knew that Plaintiff had a disability that limited a major life activity.

98. Plaintiff was able to perform the essential job duties of Plaintiff's position with reasonable accommodation for Plaintiff's disability.

99. Plaintiff requested that Defendants make reasonable accommodations for Plaintiff's disabilities so that he would be able to perform the essential job requirements,

including (1) reduction of excessive meetings and increased independent work time; (2) flexibility regarding participation in group social events and non-essential in-person interactions; and (3) additional visual and structured onboarding support due to auditory processing limitations.

100. Defendants refused to provide a reasonable accommodation to Plaintiff without engaging in a good faith interactive process.

101. At all times material to this Complaint, Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that Plaintiff would be able to perform the essential job requirements.

102. Plaintiff was discharged in violation of the Fair Employment and Housing Act by Defendants due to Plaintiff's disability.

103. Plaintiff suffered harm when Defendants failed to engage in a good faith interactive process with Plaintiff.

104. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

105. As a direct and proximate result of the aforementioned adverse employment actions by Defendants against Plaintiff, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at trial.

106. As a direct and proximate result of Defendants' wrongful termination of Plaintiff's employment, Plaintiff has suffered humiliation, emotional distress, and pain and anguish, all to Plaintiff's damage in an amount according to proof at trial.

107. The conduct of Defendants and each of them as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights. Defendants and each of them, and their agents/employees, managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said Defendants.

108. Government Code section 12965(c)(6) permits the court to award reasonable

attorneys' fees and costs, including expert witness fees, to a plaintiff that successfully pursues a FEHA claim. Plaintiff has and will continue to incur attorneys' fees in the pursuit of this action. As such, Plaintiff is entitled to an award of reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

*Failure to Prevent Discrimination and/or Retaliation in Violation of FEHA*

*(On Behalf of Plaintiff Against All Defendants)*

109. Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

110. Government Code section 12940(k) provides in relevant part:

> It is an unlawful employment practice . . .[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination[,] harassment [and/or retaliation] from occurring.

111. Further, case law supports that retaliation, in addition to discrimination and harassment, is a form of discrimination under the FEHA actionable under Government Code section 12940(k).

112. Defendants failed to take all reasonable steps necessary to prevent discrimination against Plaintiff based on his disability and requests for a reasonable accommodation.

113. Plaintiff suffered and continues to suffer harm as a result of Plaintiff's discharge by Defendants.

114. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

115. As a direct and proximate result of the aforementioned adverse employment actions by Defendants against Plaintiff, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at trial.

116. As a direct and proximate result of Defendants' wrongful termination of

Plaintiff's employment, Plaintiff has suffered humiliation, emotional distress, and pain and anguish, all to Plaintiff's damage in an amount according to proof at trial.

117. The conduct of Defendants and each of them as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights. Defendants and each of them, and their agents/employees, managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said Defendants.

118. Government Code section 12965(c)(6) permits the court to award reasonable attorneys' fees and costs, including expert witness fees, to a plaintiff that successfully pursues a FEHA claim. Plaintiff has and will continue to incur attorneys' fees in the pursuit of this action. As such, Plaintiff is entitled to an award of reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION

*Retaliation in Violation of FEHA*

*(On Behalf of Plaintiff Against All Defendants)*

119. Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

120. FEHA prohibits an employer from discriminating against or retaliating against an employee for opposing any practice forbidden by the FEHA or because the person has made a complaint about conduct perceived to be a violation of the FEHA. This subsection was amended in 2015 to explicitly prohibit retaliation for requesting accommodation, in particular, in Cal. Gov. Code 12940(m).

121. Defendants are employers bound by FEHA.

122. Defendants employed Plaintiff.

123. During Plaintiff's employment with Defendants, Plaintiff suffered from a disability, as described herein.

124. Plaintiff's medical conditions limited his ability to participate in major life

activities, including work. Plaintiff was able to perform Plaintiff's essential job duties with reasonable accommodation for his disability.

125. Defendants knew that Plaintiff had a disability, which limited major life activities, including work, and/or treated Plaintiff as if he had a physical disability which limited major life activities, including work.

126. Plaintiff required reasonable accommodations for disabilities. Plaintiff engaged in protected activity by requesting reasonable accommodations for his disabilities and communicating his limitations to his supervisors.

127. Defendants retaliated against Plaintiff because of Plaintiff's need for reasonable accommodation. On or about September 9, 2025, Defendants terminated Plaintiff's employment.

128. Plaintiff is informed and believes and based thereon alleges that Plaintiff's need for reasonable accommodations were motivating factors in Defendants' decision to terminate Plaintiff's employment in violation of FEHA.

129. Plaintiff is informed and believes and based thereon alleges that the decision to terminate Plaintiff was made and/or ratified by Defendants' managing agents, officers and/or directors who were conscious of Plaintiff's right to reasonable accommodations in Plaintiff's employment under the FEHA, but disregarded those rights and acted with the intent to cause Plaintiff injury by terminating Plaintiff's employment. Defendants' disregard of Plaintiff's statutory rights is in violation of statute and public policy and would be looked down on and despised by reasonable persons.

130. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

131. As a direct and proximate result of the aforementioned adverse employment actions by Defendants against Plaintiff, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at trial.

132. As a direct and proximate result of Defendants' wrongful termination of Plaintiff's employment, Plaintiff has suffered humiliation, emotional distress, and pain and

anguish, all to Plaintiff's damage in an amount according to proof at trial.

133. The conduct of Defendants and each of them as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights. Defendants and each of them, and their agents/employees,managing agents, and/or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said Defendants.

134. Government Code section 12965(c)(6) permits the court to award reasonable attorneys' fees and costs, including expert witness fees, to a plaintiff that successfully pursues a FEHA claim. Plaintiff has and will continue to incur attorneys' fees in the pursuit of this action. As such, Plaintiff is entitled to an award of reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

*Wrongful Termination in Violation of Public Policy*

*(On Behalf of Plaintiff Against All Defendants)*

135. Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

136. Defendants' conduct violated fundamental, substantial, and well-established public policies of the State of California, including (a) the prohibition against disability discrimination in employment set forth in the Fair Employment and Housing Act, Cal. Gov. Code §§ 12940(a) and (m), (b) the prohibition against retaliation for requesting reasonable accommodation under Cal. Gov. Code § 12940(h) and (m)(2), and (c) the right of every Californian to pursue and engage in a chosen occupation free from invidious discrimination, as guaranteed by Article I, Section 8 of the California Constitution. These public policies are tethered to specific constitutional and statutory provisions, inure to the benefit of the public at large rather than to any individual employer, and were well-established at the time of Plaintiff's termination.

137. Defendants employed Plaintiff.

138. Defendants terminated Plaintiff in violation of Plaintiff's rights and public policy by terminating Plaintiff due to his disability and/or requests for reasonable accommodation.

139. Plaintiff was harmed.

140. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

141. In doing the acts described herein, Defendants deprived Plaintiff of prospective career and employment opportunities, as well as other benefits, by failing to perform its duties to administer and apply all State and local laws, procedures and regulations.

142. As a proximate result of Defendants' willful, despicable, and intentional conduct towards Plaintiff, Plaintiff has sustained substantial losses in earnings and other employment benefits.

143. As a proximate result of Defendants' willful, despicable, and intentional conduct towards Plaintiff, Plaintiff has suffered and continues to suffer humiliation, and emotional distress; the amount of such damages to be determined by proof at trial.

144. The conduct of Defendants and each of them as described above was malicious, fraudulent, or oppressive and done with a willful and conscious disregard for Plaintiff's rights. Defendants and each of them, and their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

1. For an award of compensatory damages, including without limitation lost wages, earnings, benefits, and other compensation, according to proof, as well as damages for emotional distress, loss of enjoyment of life, humiliation, pain and suffering, injury to reputation, embarrassment, fear, anxiety and anguish, according to proof as allowed by law;

2. Equitable relief including, but not limited to, reinstatement;

3. For an award of punitive damages as allowed by law;

4. For a declaratory judgment that Defendant has violated California public policy;

5. For an award of prejudgment and post-judgment interest;

6. For an award of reasonable attorneys' fees;

7. For statutory fees and/or penalties;

8. For all costs of suit; and

9. For an award of any other and further legal and equitable relief as the Court deems just and proper.

Dated: May 16, 2026

REMEDY LAW GROUP LLP

By: s/ Andranik Tsarukyan
Andranik Tsarukyan
Armen Zenjiryan

*Attorneys for Plaintiff*
*Adam Wolf*

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury as to all causes of action.

Dated: May 16, 2026

REMEDY LAW GROUP LLP

By: s/ Andranik Tsarukyan
Andranik Tsarukyan
Armen Zenjiryan

*Attorneys for Plaintiff*
*Adam Wolf*